United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| RENEE MARIE LEPAGE,<br><br>  Plaintiff,<br><br>  v.<br><br>DEPUTY TIMOTHY REID,<br><br>  Defendants. | Case No. 17-cv-00600-LB<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: ECF No. 91 |

## INTRODUCTION

In December 2015, Napa County Deputy Sheriff Timothy Reid — while responding to a disturbance in a courtroom at the Napa County courthouse — allegedly seriously injured the plaintiff Renee LePage, who was there for an unrelated court appearance.[1] Ms. LePage sued him for excessive force in violation of the Fourth Amendment, negligence, battery, and a violation of California's Bane Act, Cal. Civ. Code § 52.1.[2] Deputy Reid moved for summary judgment on the ground that any physical contact was accidental and thus was not a seizure under the Fourth Amendment or grounds for punitive damages or liability under the Bane Act claim. Because there

---

[1] First Amended Complaint ("FAC") – ECF No. 65. Citations refer to the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.* at 4–8. The complaint had a *Monell* claim; the parties stipulated to its dismissal. ECF No. 94.

ORDER – No. 17-cv-00600-LB

are material issues of disputed fact regarding — among other things — whether Deputy Reid's conduct was intentional, the court denies the motion for summary judgment.[3]

## STATEMENT

On December 1, 2015, Ms. LePage was in Department E of the Napa County Superior Courthouse.[4] Two inmates had a fight in the courtroom's inmate-holding cell.[5] A deputy named Matlock ordered another deputy named Bullis to clear the courtroom.[6] Ms. LePage started to leave the courtroom.[7] Department E has two sets of double doors.[8] The first set opens out from the courtroom into a vestibule — with attorney-client-meeting rooms on each side — and the second set opens out into the hallway.[9] Ms. LePage said that she walked through the first set of doors, spoke briefly with her attorney Molly Hendry in one of the attorney-client-meeting rooms in the vestibule, and then went back into the vestibule and began to open one side of the second set of double doors outward into the hall.[10] At this point, the plaintiff and the defendant dispute the nature of the incident and the force used by the defendant.[11]

Ms. LePage described an empty vestibule, her holding the door for Deputy Reid and making eye contact with him, and Deputy Reid's conduct: making a "beeline" straight for her, body slamming her with his heavy, bullet-proof vest (which felt like he was using a weapon against

---

[3] All parties consented to the undersigned's jurisdiction. Consent Forms – ECF Nos. 7, 9, and 15. The court held a hearing on the motion on November 15, 2018. Minute Entry – ECF No. 101.

[4] LePage Dep. – ECF No. 95-1 at 22 (p. 52:1)

[5] Reid Dep. – ECF No. 91-2 at 12 (p. 44:23).

[6] Downs. Decl. – ECF No. 91-2 at 112.

[7] LePage Dep. – ECF No. 95-1 at 24 (p. 57:18).

[8] *Id.* at 21 (p. 52:12).

[9] *Id.* (p. 52:14–22).

[10] *Id.* at 25–27 (pp. 58:5–60:23).

[11] This order does not recount fully the background facts, which are not relevant to the analysis, but they include the plaintiff's immediate reporting of the incident to law-enforcement officers, her fragile state, her subsequent medical treatment at the emergency room, her previous medical treatment for spinal stenosis, and her subsequent spinal surgery and medical treatment. *Id.* at 44–57 (pp. 84:4–87:25); LePage Decl. – ECF No. 95-1 at 72–73.

her), pushing her into the door, and (when she bounced back), grabbing both her upper arms with both of his hands and forcefully throwing her back against the same door.[12] He then told her, "Get out of my way" and walked past her.[13]

Deputy Reid described his response to loud "thumps" coming from Courtroom E, the request for him to "cover" the incident, his approach to Courtroom E, his encounter of a crowd of 20 moving through the vestibule, and his several announcements to get out of the way and clear the way.[14] He did not touch anyone intentionally in the vestibule, did not remember having contact with the plaintiff, and described any contact with her as "unintentional and as a result of [his] moving into the courtroom."[15]

The defendant also cited deposition testimony of two other witnesses. The first was the plaintiff's attorney Molly Hendry, who described how "everyone started pouring out of" Department E.[16] She described being in the vestibule with the plaintiff.[17] When people came out of the courtroom and into the vestibule, it became crowded and "very chaotic."[18] Deputy Reid was "focused and quick" as he moved through the vestibule.[19] The encounter lasted seconds.[20] Deputy Reid might have bumped the plaintiff, and she remembered that the plaintiff was upset.[21] It did not look like a purposeful assault.[22] She also testified about things she did not remember or see, such

---

[12] LePage Dep. – ECF No. 95-1 at 28 (p. 62:6–25), 32 (p. 69:16–17), 34 (pp. 71:17–72:3), 55 (p. 103:3–5), 56 (p. 104:15–16), 57 (p. 105:7–11).

[13] *Id.* at 55 (p. 103:3–5) and 38 (p. 75:4–6).

[14] Reid Dep. – ECF No. 91-2 at 12 (p. 43:19), 12 (p. 44:20–25), 20 (pp. 64:25–65:3), 21 (pp. 78:20–79:6).

[15] *Id.* at 19 (p. 72:6–8).

[16] Hendry Dep. – ECF No. 91-2 at 30 (pp. 13:1–14:11).

[17] *Id.* at 34 (pp. 27:14–28:1)

[18] *Id.* at 36 (p. 34:11–22).

[19] *Id.* at 40 (p. 51:14–16).

[20] *Id.* at 32 (p. 18:5–9), 36 (p. 34:19–22) (two seconds); *id.* at 31–32 (pp. 17:25–18:1).

[21] *Id.* at 36 (pp. 36:19–23 and 37:23–25).

[22] *Id.* at 39 (p. 48:13–25).

as the plaintiff's falling down or leaving the vestibule, because it was chaotic.[23] The second witness was a deputy district attorney, who was in one of the conference rooms adjacent to the vestibule; she described how "people started flooding out of the courtroom" into the vestibule, with "a lot of people all at once in the vestibule that had been mostly empty or entirely empty moments previous."[24]

**STANDARD OF REVIEW**

The court must grant a motion for summary judgment if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Material facts are those that may affect the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* at 248–49.

The party moving for summary judgment bears the initial burden of informing the court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) ("When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'") (quoting *Celotex*, 477 U.S. at 325).

If the moving party meets its initial burden, the burden then shifts to the non-moving party to produce evidence supporting its claims or defenses. *Nissan Fire & Marine*, 210 F.3d at 1103. The

---

[23] *Id.* at 32 (p. 18:5–9), 36 (p. 37:23–25).

[24] Miller Dep. – ECF No. 91-2 at 49 (pp. 12:20–13:3, 14:11–23).

non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. *See Devereaux*, 263 F.3d at 1076. If the non-moving party does not produce evidence to show a genuine issue of material fact, the moving party is entitled to summary judgment. *See Celotex*, 477 U.S. at 323.

In ruling on a motion for summary judgment, the court does not make credibility determinations or weigh conflicting evidence. Instead, it views the evidence in the light most favorable to the non-moving party and draws all factual inferences in the non-moving party's favor. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991).

# ANALYSIS

## 1. The Fourth Amendment

Deputy Reid argues that his encounter with the plaintiff was an accident and thus was not a seizure under the Fourth Amendment.[25] The court holds that the parties' disputed facts preclude summary judgment.

Section 1983 provides a cause of action for the deprivation of "rights, privileges, or immunities secured by the Constitution or laws of the United States" by any person acting "under color of any statute, ordinance, regulation, custom, or usage." *Gomez v. Toledo*, 446 U.S. 635, 639 (1980). Section 1983 is not itself a source for substantive rights but rather is a method for vindicating federal rights conferred elsewhere. *Graham v. Connor*, 490 U.S. 386, 393–94 (1989). To state a claim under Section 1983, a plaintiff must allege: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct violated a right secured by the Constitution or laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988). The

---

[25] Motion – ECF No. 91 at 11–12.

defendants do not dispute that Deputy Reid acted under color of state law.[26] The issue is whether he seized the plaintiff in violation of her constitutional rights under the Fourth Amendment.

The general rule is that "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. McClendon*, 713 F.3d 1211, 1215 (9th Cir. 2013) (quoting *United States v. Medenhall*, 446 U.S. 544, 554 (1980)).[27] A seizure occurs only when the police terminate an individual's freedom of movement through means intentionally applied. *United States v. Al Nasser*, 555 F.3d 722, 728 (9th Cir. 2009) (citing *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596–97 (1988)).[28]

Deputy Reid moves for summary judgment on the ground that his encounter with the plaintiff was accidental. If he bumped (or even ran over) the plaintiff accidentally, it would not be a seizure within the meaning of the Fourth Amendment. *See Brower*, 489 U.S. at 596 ("[T]he Fourth Amendment addresses 'misuse of power,' not the accidental effects of otherwise lawful government conduct.") (internal citations omitted); *see also County of Sacramento v. Lewis*, 523 U.S. 833, 843–45 (1998). But the facts are disputed. The plaintiff describes intentional conduct aimed specifically at her. The defendant describes an accident. Whether the plaintiff was an incidental victim of police action or instead was a target is a disputed issue of fact that precludes

---

[26] *See* Mot. – ECF No. 91.

[27] "[T]his determination is 'a *necessary*, but not a *sufficient*, condition for seizure. In addition, some form of 'touching or submission' is also required." *McClendon*, 713 F.3d at 1215. (emphasis in original) (quoting *California v. Hodari D.*, 499 U.S. 621, 626–28 (1991)). "Regardless of how unreasonable the officers' actions were, and regardless of how reasonable it was for [the individual] to feel restrained," if an individual was not physically touched by the police and did not actually submit to their authority, there was no seizure, and the Fourth Amendment is not implicated. *Id.* at 1217 (citing *Hodari D.*, 499 U.S. at 626). For purposes of summary judgment, Deputy Reid does not dispute that he touched the plaintiff, who alleges serious injury. Reid Dep. – ECF No. 91-2 at 19 (pp. 71:20–72:25).

[28] An illustration of this includes the following. In the absence of submission, if the police use physical force to try to seize an individual but do not actually terminate his freedom of movement, no seizure has occurred. *United States v. Hernandez*, 27 F.3d 1403, 1407 (9th Cir. 1994) ("A seizure does not occur if an officer applies physical force in an attempt to detain a suspect but such force is ineffective.") (citing *Hodari D.*, 499 U.S. at 625); *accord Al Nasser*, 555 F.3d at 729 ("the car or individual's freedom of movement [must] end" to constitute a seizure) (citations omitted).

1   summary judgment. *See Rodriguez v. City of Fresno*, 819 F. Supp. 2d 937, 946 (9th Cir. 2011)
2   (collecting and analyzing cases). Fact disputes like this require the fact finder to sift through the
3   evidence, draw inferences from it, and resolve credibility issues. *Smith v. City of Hemet*, 394 F.3d
4   689, 701 (9th Cir. 2005). For this reason, the Ninth Circuit "has held on many occasions that
5   summary judgment . . . in excessive force case should be granted sparingly." *Id.*

The defendant nonetheless argues that the plaintiff's self-serving account is uncorroborated and speculative and thus does not create a genuine issue of material fact.[29] This does not change the outcome.

There is some authority for the proposition that if a plaintiff's only evidence of wrongful seizure and excessive force is her own self-serving testimony, and the testimony is incredible, it does not create a fact dispute. *See Jeffreys v. New York*, 426 F.3d 549, 551–55 (2nd Cir. 2005) (upheld the district court's holding that no jury could believe the plaintiff's testimony that police beat him on the body and head with a flashlight and must have thrown him out of the window because he did not remember jumping; the account differed markedly from his three previous statements that he jumped out of the window (one statement to medical personnel on the day of the incident, one to the police two days later, and one to Department of Corrections screening personnel); medical evidence confirmed that he had not lost consciousness and there were no blows to the head; the sole police officer testified that the plaintiff jumped).

The testimony here is not riddled with the inconsistencies of *Jeffreys*. There are not contradictory statements or contradictory evidence. *Cf. Jeffreys*, 426 F.3d at 551–555. The defendant's cases — cited to support the argument that the court can disregard the plaintiff's account — also involve the submission of sworn statements that contradicted prior testimony. *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996); *Thornhill Pub. Co. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Moreover, the plaintiff proffers evidence of her severe injury from the encounter.[30] While that injury does not establish Deputy Reid's scienter, her

---

[29] Mot. – ECF No. 91 at 14–15.

[30] *See supra* n. 11.

testimony does not have the quality of fabrication that might drive a court's conclusion that a plaintiff's account is so self-serving that it does not create an issue of fact. Also, the extent of her injury may be relevant to Deputy Reid's credibility: he said that he did not remember any contact with the police.[31] Finally, the eyewitnesses' accounts of a chaotic atmosphere do not render the plaintiff's account implausible as a matter of law. Eyewitness testimony — even if genuinely recounted — can be imperfect. And one witness did not see the encounter at all[32] and the other witness did not categorically support Deputy Reid's account or categorically contradict the plaintiff's.[33]

The court denies the motion for summary judgment.

**2. Punitive Damages and the Bane Act Claim**

For similar reasons, the defendant moves to preclude punitive damages and for summary judgment on the Bane Act claim.[34] The court denies the motion.

A § 1983 plaintiff may recover punitive damages if the plaintiff shows by a preponderance of the evidence that the state actor acted with malicious or evil intent or in callous disregard of a plaintiff's federally protected rights. *Smith v. Wade*, 461 U.S. 30, 56 (1983). Similarly, to obtain punitive damages under California law, a plaintiff must show by clear and convincing evidence that a defendant acted with malice, fraud, or oppression. Cal. Civ. Code § 3294; *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 712 (2009). Finally, the Bane Act prohibits interference or attempted interference by "threats, intimidation, or coercion" with a person's rights under federal or California law and the United States and California constitutions. Cal. Civ. Code § 52.1.

Because the facts are disputed, the court cannot find as a matter of law that punitive damages are precluded or that Deputy Reid lacked the requisite intent under the Bane Act. The court denies summary judgment.

---

[31] *See supra* Statement.

[32] Miller Dep. – ECF No. 95-1 at 105 (pp. 20:22–21:6).

[33] Hendry Dep. – ECF No. 91-2 at 31–32 (pp. 17:17–18:9).

[34] Mot. – ECF No. 91 at 13–15 and 19–20.

## CONCLUSION

The court denies the summary-judgment motion.

This disposes of ECF No. 91.

**IT IS SO ORDERED.**

Dated: November 20, 2018

LAUREL BEELER
United States Magistrate Judge