MIRIAM KIM (State Bar No. 238230)
miriam.kim@mto.com
EMILY C. CURRAN-HUBERTY (State Bar No. 293065)
emily.curran-huberty@mto.com
SKYLAR D. BROOKS (State Bar No. 310707)
skylar.brooks@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street
Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone:     (415) 512-4000
Facsimile:     (415) 512-4077

Attorneys for Plaintiff
RENEE LEPAGE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| RENEE LEPAGE, an individual,<br><br>    Plaintiff,<br><br>    vs.<br><br>COUNTY OF NAPA; COUNTY OF NAPA SHERIFF'S DEPARTMENT; AND DEPUTY TIMOTHY REID,<br><br>    Defendants. | Case No. 3:17-cv-00600-LB<br><br>**PLAINTIFF'S MOTION *IN LIMINE* NO. 1 TO EXCLUDE DR. THOMAS MAMPALAM'S OPINIONS REGARDING PURPORTED PSYCHIATRIC AND PSYCHOLOGICAL DIAGNOSES**<br><br>Judge:   Hon. Laurel Beeler<br>Date:    September 26, 2019<br>Time:   1:30 p.m.<br>Crtrm.: B – 15th Floor<br><br>Trial Date.:    October 15, 2019 |

17-cv-00600-LB

PLAINTIFF'S MOTION *IN LIMINE* NO. 1 TO EXCLUDE DR. THOMAS MAMPALAM'S OPINIONS REGARDING PURPORTED PSYCHIATRIC AND PSYCHOLOGICAL DIAGNOSES

## I. INTRODUCTION

Defendants intend to have neurosurgeon Dr. Thomas Mampalam offer speculative opinions that Plaintiff Renee LePage likely has psychological or psychiatric disorders, among other testimony. Ms. LePage acknowledges that Dr. Mampalam is generally qualified to testify regarding her physical spinal conditions and neurosurgical issues, but he lacks sufficient knowledge and experience, as well as reliable bases, to diagnose Ms. LePage with psychological or psychiatric disorders. Moreover, any probative value of such speculative opinions is greatly outweighed by the danger of undue prejudice, confusing the issues, and misleading the jury. Dr. Mampalam therefore should be precluded from offering opinions that suggest that Ms. LePage likely has a psychological or psychiatric condition.

Dr. Mampalam is a neurosurgeon who focuses on spinal surgery. Brooks Decl. Ex. A ("Mampalam CV"); *id.* Ex. B (Mampalam Dep. ("Dep.")) 12:23-13:7, 15:25-16:3. He acknowledges that he is "not a psychiatrist or a psychologist." Dep. 15:25-16:3. In Defendants' expert disclosures, they disclosed Dr. Mampalam as a "retained neurosurgeon and IME physician," not as an expert in psychiatry or psychology. *Id.* Ex. C ("Defs.' Expert Disclosure") at 1. Likewise, when Dr. Mampalam was asked at his deposition what areas of expertise he has that are relevant to his opinions in his case, he identified only that he is a board-certified neurosurgeon and has experience practicing as a neurosurgeon. Dep. 12:23-13:7. Dr. Mampalam has no specialized training in psychiatry or psychology, Mampalam CV & Dep. 12:20-13:7, 55:17-20; he is not board-certified in psychiatry or psychology, Mampalam CV & Dep. 17:9-13; he is not qualified to treat psychiatric conditions, Dep. 55:6-8; and he has not published any research that bears on his opinions in this case, *id.* at 18:11-20.

Despite his lack of expertise in psychiatry and psychology, Dr. Mampalam offered opinions in his expert report and at his deposition that Ms. LePage likely has one or more psychiatric or psychological disorders. For example, he opined in his report that Ms. LePage "has an abnormal gait that appears unlikely to be due to a cervical myelopathy, but is more likely a hysterical gait, a psychiatric disorder such as a conversion reaction, or an extreme case of symptom elaboration in the context of possible secondary gain." Brooks Decl. Ex. D ("IME

Report") at 12.  At his deposition, Dr. Mampalam provided the following definitions of these conditions:

- "[A hysterical gait] means a gait that is abnormal based on a psychiatric or psychological condition rather than a physical condition." Dep. 50:19-51:2.
- "[A conversion reaction] is a specific type of psychological condition where a patient develops a physical abnormality . . . for which physicians can't find a physiological or anatomic basis.  And it can . . . be related to some kind of emotional or psychological turmoil." *Id.* at 51:3-11.
- "[Symptom elaboration in the context of possible secondary gain can mean] that she was making it up . . . either unconsciously or consciously and doing these things for the possibility of getting some external motivating factor such as financial compensation or time off work or something else like that." *Id.* at 51:12-21.

The basis Dr. Mampalam provided for his opinion that Ms. LePage more likely has one of these three conditions was simply that "[i]f [Ms. LePage's abnormal gait] was not related to something physical, it is likely something psychological or psychiatric." *Id.* at 53:5-10.

In addition, Dr. Mampalam stated in his report and at his deposition that Ms. LePage "underwent cervical spine surgery for what is likely mostly a psychological or psychiatric condition." IME Report at 13; Dep. 47:8-21, 67:14-68:6.  The basis Dr. Mampalam provided for this opinion was that he believed there was a discrepancy between Plaintiff's complaints and the objective findings.  *See* Dep. 67:14-68:23.  In his report and during his deposition, Dr. Mampalam did not identify any objective bases that support diagnosing Ms. LePage with a specific psychological or psychiatric disorder.  Dr. Mampalam performed a physical examination of Ms. LePage for this case but has never performed a psychiatric evaluation of her.  *See generally* IME Report & Dep. 27:22-28:2.

/////

## II. ARGUMENT

### A. Dr. Mampalam's Opinions that Purport to Diagnose Ms. LePage with Psychological or Psychiatric Disorders Are Inadmissible Under Federal Rule of Evidence 702, Because They Are Outside His Expertise and Are Speculative and Unreliable

Rule 702 of the Federal Rules of Evidence permits expert testimony only if a witness "is qualified as an expert by knowledge, skill, experience, training, or education," and only provided that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "In applying Rule 702, the Court functions as a gatekeeper, determining whether proffered expert testimony meets the requirements of Rule 702 by a preponderance of the evidence." *In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 984 F. Supp. 2d 1021, 1026 (C.D. Cal. 2013) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 & n.10 (1993)).

Rule 702 requires, among other things, that "an expert's testimony has 'a reliable basis in the knowledge and experience of the relevant discipline.'" *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999) ("*Kumho*")). The test of reliability is "flexible," *Kumho*, 526 U.S. at 141; "not only must the trial court be given broad discretion to decide whether to admit expert testimony, it 'must have the same kind of latitude in deciding *how* to test an expert's reliability,'" *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000) (quoting *Kumho*, 526 U.S. at 152). But "Rule 702 demands that expert testimony relate to scientific, technical or other specialized knowledge, which does not include unsubstantiated speculation and subjective beliefs." *Diviero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851, 853 (9th Cir. 1997). The Advisory Committee Notes to Rule 702 explain:

> If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply "taking the expert's word for it."

Advisory Committee Notes to 2000 Amendment to Fed. R. Evid. 702.

Here, Dr. Mampalam does not have the appropriate "knowledge, skill, experience, training, or education" to purport to diagnose Ms. LePage with psychiatric or psychological disorders. *See* Fed. R. Evid. 702. He does not practice as a psychiatrist or a psychologist, he has no specialized training in psychiatry or psychology, and he is not qualified to diagnose or treat specific psychiatric or psychological conditions. *See supra* at 1. The only relevant qualification he identified was that if he suspects a patient might have a psychiatric or psychological condition, he refers them to a psychiatrist before performing surgery on them. *See* Dep. 53:20-55:20. His experience identifying that a patient might have a psychiatric condition upon further evaluation by a psychiatrist does not qualify him to personally purport to diagnose Ms. LePage with psychiatric or psychological disorders. *See id.*

In addition, Dr. Mampalam's opinions are inadmissible under Rule 702 because they are unreliable. Dr. Mampalam's report and deposition testimony do not indicate that his opinions are "the product of reliable principles and methods," or that he "has applied the principles and methods reliably to the facts of the case." *Estate of Barabin*, 740 F.3d at 463. Although Dr. Mampalam testified at his deposition that in his practice as a neurosurgeon, he considers whether a psychological or psychiatric condition might be an alternative explanation for a patient's reported pain or impairment before performing surgery on them, *see* Dep. 53:11-54:16, his opinions go farther than that and conclude that Ms. LePage *likely does* in fact have a psychological or psychiatric disorder in connection with her abnormal gait and her reported symptoms in connection with her spine, *see* IME Report at 12 ("[Ms. LePage] has an abnormal gait that appears unlikely to be due to a cervical myelopathy, but is more likely a hysterical gait, a psychiatric disorder such as a conversion reaction, or an extreme case of symptom elaboration in the context of possible secondary gain."); *id.* at 13 ("[Ms. LePage] underwent cervical spine surgery for what is likely mostly a psychological or psychiatric condition."). Dr. Mampalam provides no

methodology or objective basis for this jump in reasoning.  He did not testify that he diagnoses and treats specific psychiatric or psychological disorders as part of his practice.  Dr. Mampalam has never performed a psychiatric evaluation of Ms. LePage, nor is he qualified to do so.  Neither did he rely in his report or at his deposition on any personal observations of specific psychiatric symptoms indicated by Ms. LePage or on any psychiatric or psychological records of Ms. LePage.

The only basis Dr. Mampalam provided for his opinion that Ms. LePage's abnormal gait likely is due to "a hysterical gait, a psychiatric disorder such as a conversion reaction, or an extreme case of symptom elaboration in the context of possible secondary gain," IME Report at 12, was that "[i]f [Ms. LePage's abnormal gait] was not related to something physical, it is likely something psychological or psychiatric." Dep. 53:5-10.  Likewise, Dr. Mampalam's claim that Ms. LePage "underwent cervical spine surgery for what is likely mostly a psychological or psychiatric condition" is unsubstantiated.  *See, e.g.*, *United States v. Geanakos*, No. 2:13-CR-0404-GEB, 2017 WL 374351, at *5 (E.D. Cal. Jan. 26, 2017) (excluding expert testimony regarding Autism Spectrum Disorder as unreliable where expert used "conclusory terms" to describe the support for his opinions and "ma[de] bald statements about [the defendant's] mental state, which are unsupported by a documented reasoning process").  Dr. Mampalam provides no documented support for his reasoning process, and "[t]he trial court's gatekeeping function requires more than simply 'taking the expert's word for it,'" Advisory Committee Notes to 2000 Amendment to Fed. R. Evid. 702.  Dr. Mampalam's unsupported opinions that Ms. LePage likely has psychiatric or psychological disorders must be excluded because they do not meet the required threshold of reliability under Rule 702.

    **B.**    **Dr. Mampalam's Speculative Opinions that Purport to Diagnose Plaintiff with Psychological or Psychiatric Disorders Are Also Inadmissible Under Rule 403's Balancing Test**

Dr. Mampalam's opinions relating to Ms. LePage likely having psychological or psychiatric disorders are also independently inadmissible under Rule 403.  *Rogers v. Raymark Indus., Inc.*, 922 F.2d 1426, 1430 (9th Cir. 1991) ("Even if the court finds a witness qualified under Rule 702, it may still exclude testimony under Rule 403.").  Under Rule 403, evidence may be excluded if its probative value is substantially outweighed by the danger of "unfair prejudice,

confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

The probative value of the opinions at issue is very low. Dr. Mampalam has never performed a psychiatric evaluation of Ms. LePage, and there is no evidence in the record that Plaintiff does in fact have a psychological or psychiatric disorder. Instead, Dr. Mampalam simply speculates that Ms. LePage might have one of several psychological or psychiatric conditions in connection with her abnormal gait, IME Report at 12 & Dep. 50:19-53:10, and that she likely has an undefined "psychological or psychiatric condition" that led to her surgery, IME Report at 13 & Dep. 47:8-21. Such statements add very little to his other opinions—that the objective findings do not appear to account for Ms. LePage's abnormal gait or reported symptoms, that the incident with Deputy Reid did not injure Ms. LePage's spine, and that Ms. LePage's second surgery was medically unnecessary. *See* IME Report at 12-13. Moreover, Dr. Mampalam could offer testimony generally regarding potential alternative explanations for an abnormal gait based on his experience, without elaborating on specific psychological or psychiatric conditions or offering the unsupported opinion that Ms. LePage likely has one of them.

On the other hand, Dr. Mampalam's opinions that Ms. LePage likely has psychiatric or psychological disorders have a high risk of unduly prejudicing the jury to disregard Ms. LePage's account both of the incident with Deputy Reid and of her symptoms and limitations. Not only are his opinions likely to evoke general biases against people with mental health conditions, but also, his suggestion that Ms. LePage might have a "hysterical gait," be suffering from emotional or psychological turmoil, or be making up her symptoms for secondary gain is highly prejudicial. Once Dr. Mampalam suggests these ideas to the jury, especially with an aura of authority as a medical doctor, Ms. LePage cannot fully remedy their prejudicial effect through cross-examination or other evidence. Dr. Mampalam's opinions also pose the risk of creating a mini-trial on Ms. LePage's psychiatric and psychological health, and of misleading the jury to believe that Ms. LePage has in fact been determined to have the psychiatric and psychological disorders of which Dr. Mampalam speculates. Dr. Mampalam's opinions that Ms. LePage likely has

psychiatric or psychological disorders therefore should be excluded under Rule 403's balancing test.

### III.  CONCLUSION

The Court should preclude Dr. Mampalam from offering opinions that suggest that Ms. LePage likely has psychiatric or psychological disorders, because such testimony is inadmissible under Federal Rules of Evidence 702 and 403.

DATED: August 20, 2019            Respectfully submitted,

MUNGER, TOLLES & OLSON LLP
   MIRIAM KIM
   EMILY C. CURRAN-HUBERTY
   SKYLAR D. BROOKS


By:   */s/ Skylar D. Brooks*
    SKYLAR D. BROOKS

Attorneys for Plaintiff RENEE LEPAGE