UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| RENEE MARIE LEPAGE, | Case No. 17-cv-00600-LB |
| Plaintiff, | |
| v. | **FINAL PRETRIAL ORDER** |
| COUNTY OF NAPA, et al., | |
| Defendants. | |

The court held a final pretrial conference on September 26, 2019. The court issues the following pretrial order pursuant to Federal Rule of Civil Procedure 16(e).

## 1. Trial Date and Length of Trial

A. The jury trial will begin on October 15, 2019, in Courtroom B, 15th Floor, U.S. District Court, 450 Golden Gate Avenue, San Francisco, California. The trial will last up to three days (with opening statements and witness testimony to be completed during the first two days and closing arguments on the day or a third day). The trial will be held Tuesday through Thursday from 8:30 a.m. to approximately 1:30 or 2:00 p.m. (or slightly longer to finish a witness) and will include two fifteen-minute breaks. Counsel must arrive at 8:15 a.m. to address any issues (such as objections) before the trial day begins. Once the jury begins deliberations, it usually stays past

2:00 p.m. Also, Tuesday may run the full day and will include jury selection, opening statements, and two or three witnesses, as the day permits.

B.  Each side will have four hours per side for direct examination of its witnesses and to cross examine the other side's witnesses, including all objections raised during the trial day. In addition, each side may have up to 30 minutes for an opening statement and 45 minutes for a closing argument.

## 2.  Procedures During Trial; Exhibit and Witness Lists; Witnesses

The parties should refer to the court's May 19, 2017 Pretrial Order[1] for the court's procedures regarding the presentation of exhibits, depositions, and witness testimony during trial. In particular, the court reminds the parties of its procedures for using deposition excerpts.[2]

The parties will call the witnesses on their separate witness lists. As discussed at the pretrial conference, if the parties identify the same witnesses, the defendant will examine the witnesses when the plaintiff calls them (as opposed to recalling them).

## 3.  Claims, Defenses, and Relief Sought

### 3.1  Plaintiff's Claims

Plaintiff Renee LePage asserts that defendant Tim Reid used excessive force against her in the vestibule area outside a courtroom at the Napa County courthouse. Ms. LePage has the following claims:

1.  a 42 U.S.C. § 1983 claim for excessive force in violation of the Fourth Amendment (against Deputy Reid);

2.  a state-law battery claim (against all defendants);

3.  a state-law negligence claim (against all defendants); and

---

[1] Case Mgmt. and Pretrial Order – ECF No. 31. Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.* at 7–8.

4. a claim for excessive force for violation of the Bane Act, Cal. Civ. Code § 52.1

   (against all defendants).

Ms. LePage claims that Defendants County of Napa and the Napa County Sheriff's Department are vicariously liable on her state-law claims (but not her Section 1983 claim) for defendant Reid's wrongful acts.

### 3.2 Defendant's Defenses

Defendant Tim Reid denies that he used excessive force against Ms. LePage under the Fourth Amendment or was negligent in the manner he entered the courtroom vestibule in response to an emergency.

### 3.3 Relief Sought

Ms. LePage seeks damages for the following injuries, in an amount according to proof and that is fair, just, and reasonable:

1. Economic damages;

2. Non-economic damages;

3. Punitive damages against Defendant Reid; and

4. Attorney's fees and costs.

## 4. Stipulations

The parties stipulate to the following facts.[3] The parties must prepare a document reflecting evidentiary stipulations (the first ten stipulations) in a format that can be read into the record and introduced as an exhibit.

1. County of Napa is and, at all relevant times was, a public entity, duly organized and existing under and by virtue of the laws of the State of California.

---

[3] Joint Proposed Pretrial Order – ECF No. 120 at 2–3; Joint Proposed Pretrial Order Ex. D – ECF No. 120-4 at 3.

2. Defendant County of Napa Sheriff's Department is a subdivision of Defendant County of Napa, which employs, manages, and supervises deputy sheriffs, who are law-enforcement officers.

3. Deputy Reid has been employed as a deputy sheriff with the County of Napa and the Napa County Sheriff's Department since August 31, 2015.

4. Deputy Reid was acting under color of state law at all times relevant to this action.

5. Deputy Reid was acting within the course and scope of his employment at all times relevant to this action.

6. On the morning of December 1, 2015, Ms. LePage was lawfully and peacefully in Department E of the Napa County Superior Courthouse located at 1111 Third Street, Napa, California ("Courthouse") for an unrelated case.

7. As Ms. LePage was exiting Courtroom E, she encountered Deputy Reid in the vestibule area between the courtroom and the public hallway.

8. The entrance to Courtroom E from the public hallway consists of one set of double doors that lead to a vestibule, followed by another set of double doors that lead to the courtroom.

9. There is an attorney conference room off of each side of the vestibule. Each conference room is accessed through a solid door.

10. At the time Deputy Reid encountered Ms. LePage, he was wearing his Department-issued bulletproof vest.

The parties stipulate to the following regarding authenticity and admissibility.[4]

11. All documents produced in this case are presumptively authentic within the meaning of Federal Rule of Evidence 901. Nothing in this stipulation limits either party's right to object to the authenticity of any particular document covered by this stipulation if evidence is proffered or introduced at trial indicating that the document may not in fact be authentic.

---

[4] Joint Proposed Pretrial Order Ex. D – ECF No. 120-4 at 3–4.

12. The following Trial Exhibits are presumed to be admissible "business records" under Federal Rule of Evidence 803(6): LePage_0000024, LePage_0000027, LePage_0000030, LePage_0000032, LePage_0000041-42, LePage_0000088, LePage_0000090, LePage_0000091, LePage_0000096, LePage_0000097, LePage_0000098, LePage_0000100, LePage_0000151–83, LePage_0000184–95, LePage_0000210, LePage_0000216, LePage_0000223–24, LePage_0000259, LePage_0000461–68; LePage_0000208–09, LePage_0000701, LePage_0000702–05. Nothing in this stipulation limits either party's right to object to specific portions or statements within the exhibits covered by this stipulation on the ground that they contain inadmissible hearsay-within-hearsay or otherwise lack trustworthiness.

The parties stipulate to exclusion of the following evidence.[5]

13. Evidence and argument regarding Ms. LePage's criminal history, including past arrests, charges, or convictions, are not relevant and will not be introduced.

14. Evidence and argument regarding the fact that Ms. LePage was present in the Napa County Courthouse on December 1, 2015 for a criminal proceeding are not relevant and will not be introduced.

15. Evidence and argument regarding Ms. LePage's psychological or psychiatric conditions, diagnoses, or treatments are not relevant and will not be introduced. This does not preclude any medical doctor from testifying to or opining on Ms. LePage's psychological or psychiatric condition, subject to the Court's ruling on Plaintiff's Motion in Limine No. 1.

16. Captain Cullen Dodd will not offer any opinion at trial regarding the application of Napa County's policies and practices to the facts of this specific case, including but not limited to an opinion that Deputy Reid's conduct toward Ms. LePage during the

---

[5] Joint Proposed Pretrial Order Ex. D – ECF No. 120-4 at 4–5. These stipulations are based on the current record, and the parties reserve the right to amend one or more of these stipulations if changed circumstances — such as the discovery of new evidence — warrant. Moreover, the parties reserve the right to introduce evidence otherwise excluded by these stipulations if the opposing party opens the door to such evidence. *Id.* at 4 n.2.

incident was reasonable, appropriate, lawful, and/or consistent with Napa County's policies.

17. Defendants will not introduce evidence or argument in support of an offset defense.

18. Evidence and argument regarding prior unrelated instances of use of force by Napa Sheriff's Deputies, including any prior unrelated citizen complaints, investigations, the outcome of the same, and the determinations/recommendations reached through the investigation of such instances, are not relevant and shall not be introduced at trial.

19. The *Monell* allegation has been dismissed from the case. As such, there will be no argument or evidence to an issue of whether or not the County of Napa acted with misfeasance or malfeasance in this trial.

20. Evidence and argument supporting any inference of ratification of this or other prior unrelated instances involving complaints of excessive force are not relevant and shall not be introduced at trial.

21. Evidence and argument regarding the adequacy of the determination and conclusion of the investigation into this incident, specifically that Deputy Reid was not disciplined, are not relevant and shall not be introduced at trial.

22. Evidence and argument regarding the adequacy of Deputy Reid's background check prior to his hiring with the County of Napa, and Napa County Sheriff's Office are not relevant and shall not be introduced at trial.

23. Evidence and argument regarding prior complaints of excessive force against Deputy Reid from his time as an employee of the San Mateo County Sheriff's Office shall not be introduced at trial.

The parties stipulate to exclusion of the following *Monell*-related evidence.[6]

24. Prior unrelated instances of use of force by Napa Sheriff's Deputies, including any prior unrelated citizen complaints, investigations, the outcome of the same, and the determinations/recommendations reached through the investigation of such instances.

---

[6] Joint Stipulation to Exclude *Monell* Related Evid. – ECF No. 113 (emphasis in original).

25. The adequacy of the Napa Sheriff's Office policies, procedures, customs, practices, supervision, training and discipline. To be clear, the parties agree only to bar evidence relating to the *adequacy* of the policies, procedures, customs, etc.; evidence of, e.g., official policies, is relevant and will be introduced at trial.

26. Any inference of ratification of this or other prior unrelated instances involving complaints of excessive force.

27. The adequacy of the investigation pertaining to this incident. To be clear, the parties agree only to not introduce evidence relating to the *adequacy* of the investigation; evidence relating to the investigation of this incident is relevant and will be introduced.

28. The adequacy of the determination and conclusion of the investigation into this incident, specifically that Deputy Reid was not disciplined.

29. The adequacy of Deputy Reid's background check prior to hiring with the County of Napa, and Napa County Sheriff's Office.

30. Evidence, questioning, and/or argument regarding prior complaints of excessive force against Deputy Reid from his time as a San Mateo County Sheriff, as irrelevant, unduly prejudicial, and improper use of character evidence.

## 5. Disputed Facts

The parties identify the following disputed facts.[7]

1. Whether Deputy Reid used force against Ms. LePage.

2. Whether any force Deputy Reid used against Ms. LePage was excessive in violation of the Fourth Amendment.

3. Whether there were any witnesses to the encounter between Deputy Reid and Ms. LePage.

4. Whether Deputy Reid's conduct injured Ms. LePage.

---

[7] Joint Proposed Pretrial Order – ECF No. 120 at 3.

5. Whether Deputy Reid intentionally interfered with or attempted to interfere with Ms. LePage's right to be free from unreasonable seizure by threats, intimidation, or coercion.

6. The nature and extent of Ms. LePage's injuries and damages.

7. Whether Deputy Reid acted with reckless disregard for Ms. LePage's rights and safety or with malice or oppression.

8. The amount of punitive damages, if any, that should issue against Defendants.

## 6. Disputed Issues for Resolution by the Court

The parties identify the following disputed issues for resolution by the court.[8]

1. Whether qualified immunity applies.

2. Whether the plaintiff is entitled to attorney's fees and costs.

## 7. Motions in Limine ("MILs")

For the reasons stated on the record and below, the court rules as follows.

### 7.1 Plaintiff's MILs

#### 7.1.1 MIL 1 to Exclude Expert Opinions Regarding Psychological and Psychiatric Diagnoses — Granted

Ms. LePage moves to preclude the defendants' expert Dr. Thomas Mampalam, a neurosurgeon who examined her, from offering opinions that she has psychological or psychiatric disorders on the grounds that (1) Dr. Mampalam is not qualified under Federal Rule of Evidence 702 to offer such opinions and (2) the probative value of such opinions is substantially outweighed by the danger of unfair prejudice and thus such opinions should be excluded under Federal Rule of Evidence 403. The court grants the motion.

---

[8] Joint Proposed Pretrial Order – ECF No. 120 at 3, 4.

The proponent of an expert opinion has the burden of proving the admissibility of the opinion under Rule 702. *Lust ex rel. Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). Assuming without deciding that a non-psychologist/psychiatrist neurosurgeon is not categorically prohibited from offering opinions generally about a patient's potential psychological disorders,[9] Dr. Mampalam's opinions here regarding Ms. LePage's purported psychological disorders do not satisfy Rule 702 because the defendants have not shown that his opinions are based on sufficient facts or data, that they are the product of reliable principles or methods, or that he has reliably applied the principles and methods to the facts of this case. *Cf.* Fed. R. Evid. 702. Dr. Mampalam did not perform a psychological or psychiatric evaluation of Ms. LePage. The only basis that he offered for his opinions regarding Ms. LePage's purported psychological disorders was that he (and other doctors) could not find a physical basis for Ms. LePage's complaints.[10] This does not show that these opinions are based on sufficient facts or data or reliable principles or methods reliably applied to the facts of this case. *Cf. Ilyia v. El Khoury*, 671 F. App'x 510, 511 (9th Cir. 2016) (affirming exclusion of expert opinion regarding plaintiff's psychiatric status where opinion was "based primarily on a few interviews and the recollections of a narrow selection of people" and "there [wa]s no evidence that psychiatrists routinely form reliable opinions based on such a limited review of a patient's mental history").

---

[9] The defendants cite *Sprague v. Bowen*, 812 F.2d 1226 (9th Cir. 1987), to argue that a physician is qualified to give an opinion regarding a patient's mental state as it relates to her physical disability even if the physician is not a psychiatrist. Defs. Opp'n to Pl. Mot. in Limine 1 – ECF No. 115-2 at 2 (citing *Sprague*, 812 F.2d at 1231–32). *Sprague* was decided before the Supreme Court's decisions in *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999), and was an appeal of a Social Security administrative proceeding, where Federal Rule of Evidence 702 does not apply. *Cf. Bayliss v. Barnhart*, 427 F.3d 1211, 1218 n.4 (9th Cir. 2005) ("The requirements established in Federal Rule of Evidence 702, *Daubert*, and *Kumho* do not govern the admissibility of evidence before the [administrative law judge] in the administrative proceeding in [a] Social Security case.").

[10] Mampalam Dep. – ECF No. 115-1 at 19–21 (pp. 51–53) ("Q. And what is the basis for your opinion that it is more likely that her abnormal gait is caused by one of those three items relating more to a psychological or psychiatric condition than due to cervical myelopathy[?] A. I answered that before when we were talking about the discrepancy between the subjective factors and the physical findings. I indicated that there was not an anatomic basis for the subjective complaints developed in the record based on examinations, not just by myself but other doctors including the treating doctors and the Plaintiff's expert witness who all documented normal motor examinations. . . . If it was not related to something physical, it is likely something psychological or psychiatric.").

In addition, Dr. Mampalam's opinions regarding Ms. LePage's purported psychological disorders are independently excludable under Rule 403 because their probative value is substantially outweighed by the danger of unfair prejudice. Dr. Mampalam already will testify that his objective findings do not account for Ms. LePage's abnormal gait or reported symptoms, that the incident with Deputy Reid did not injure Ms. LePage's spine, and that Ms. LePage's second surgery was medically unnecessary.[11] There is little additional probative value in his going beyond that to opine that Ms. LePage might have a "psychiatric disorder" (much less that she might have a "hysterical gait" or might be elaborating her symptoms for "secondary gain"), particularly given that this opinion is not based on a psychological or psychiatric evaluation.[12] This limited probative value is outweighed by the danger of unfair prejudice to Ms. LePage in characterizing her as having a "psychiatric disorder" and additionally raises the risk of creating a "mini-trial" on Ms. LePage's psychiatric and psychological health.

Pursuant to Rules 702 and 403, the court precludes Dr. Mampalam from testifying to a psychological or psychiatric diagnosis of Ms. LePage or testifying or suggesting that Ms. LePage likely has psychological or psychiatric disorders. Dr. Mampalam may testify about his physical evaluation of Ms. LePage, that he ruled out a physical basis for her symptoms, and that her surgeries were (in his opinion) unnecessary. Dr. Mampalam may also testify in the abstract that if a hypothetical patient's symptoms are not related to a physical condition, it may be that they are caused by a psychological or a psychiatric condition.[13] Dr. Mampalam may not go beyond that (1) to testify that this hypothetical patient's symptoms definitely are caused by a psychological or psychiatric condition or that they may be caused by a psychological or psychiatric "disorder" or (2) to testify about Ms. LePage's psychological or psychiatric condition specifically.

---

[11] Pl. Mot. in Limine 1 – ECF No. 115 at 7.

[12] Mampalam Rep. – ECF No. 115-1 at 42.

[13] *Cf.* Mampalam Dep. – ECF No. 115-1 at 21 (p. 53).

### 7.1.2 MIL 2 to Exclude References to Molly Hendry as Ms. LePage's "Criminal Defense Attorney," "Public Defender," or Similar Terms — Granted as Unopposed

Ms. LePage moves to preclude the defendants from referring to her attorney Molly Hendry as her "criminal defense attorney" or a "public defender," as opposed to referring to Ms. Hendry as simply being Ms. LePage's "attorney." The defendants do not oppose the motion. The court grants the motion as unopposed. The parties may not refer to (or ask questions to solicit) Ms. Hendry's standing as a public defender or the fact that she represented Ms. LePage in a criminal matter.

### 7.1.3 MIL 3 to Exclude Evidence, Questioning, or Argument Regarding Ms. LePage's Receipt of Collateral-Source Payments – Granted in Part

Ms. LePage moves to exclude all evidence, questioning, or argument regarding any collateral-source payments (including but not limited to insurance payments and public benefits from federal, state, and local sources) that she received following the December 1, 2015 incident that gave rise to this action. Ms. LePage argues that under the "collateral-source rule," any such payments do not reduce the damages Ms. LePage may seek from the defendants. The defendants raise an objection regarding a particular application of the collateral-source rule (see below) but did not argue in their written opposition that the collateral-source rule generally does not apply.[14] The court grants the motion in part. Specifically, the court grants the motion to the extent that it seeks to preclude the defendants from introducing evidence, questioning, or arguing that third parties (such as medical insurers or federal, state, or local sources) either made payments or extended benefits directly to Ms. LePage or paid any of her expenses (such as medical expenses) on her behalf.

The defendants in their opposition raised a somewhat ancillary issue that the parties discussed in more detail at the pretrial conference, namely, how to calculate Ms. LePage's medical-expenses

---

[14] At the pretrial conference, the defendants appeared to go beyond their written opposition to make a new argument that under California law, Ms. LePage can recover medical-expenses damages for her state-law claims only for expenses that she herself paid out-of-pocket and not for expenses that, e.g., an insurer paid on her behalf. That is not the law in California. As the California Supreme Court has explained, "[t]he [collateral-source] rule . . . dictates that an injured plaintiff may recover from the tortfeasor money an insurer has paid to medical providers on his or her behalf." *Howell v. Hamilton Meats & Provisions, Inc.*, 52 Cal. 4th 541, 551 (2011).

damages for her federal 42 U.S.C. § 1983 claim. Citing *Howell v. Hamilton Meats & Provisions, Inc.*, 52 Cal. 4th 541 (2011), the defendants argue that under California's collateral-source rule, Ms. LePage can recover medical-expenses damages for her state-law claims only for what her medical providers agreed to accept as full payment, not what they billed for their services. For example, if a doctor billed $1,000 for treatment but the doctor had a contract with the patient's health insurer that provided that the doctor would accept $400 as full payment, the patient cannot recover more than $400 in damages for that medical expense (as opposed to $1,000). The patient can still recover the $400 even if the patient's insurer (as opposed to the patient herself) paid the $400, but the patient cannot recover for the additional $600.

Ms. LePage argued at the hearing that the *Howell* rule does not apply to federal claims such as her Section 1983 claim and that she can instead recover as medical-expenses damages the "reasonable value" of her medical providers' services. Ms. LePage acknowledged that the "reasonable value" of her medical providers' services might be less than what the providers billed but argues that the "reasonable value" is not necessarily limited to, and might be more than, what the medical providers ultimately accepted as full payment.

It is unclear exactly what, if any, the parties are asking the court to decide with respect to this billing-versus-acceptance issue. Ms. LePage has not specifically identified what medical-expenses evidence she plans to introduce. The defendants have not specifically moved to exclude any evidence (e.g., evidence of what Ms. LePage's medical providers billed, as opposed to what they ultimately accepted as full payment). The court thus does not have the context to make a ruling. As discussed at the pretrial conference, the court directs the parties to meet and confer to see if there is a live dispute here and, if so, if they can reach an agreement, and if they cannot, to submit a joint letter brief by October 1, 2019, setting out their respective positions.

### 7.1.4 MIL 4 to Exclude Expert Opinions by Cullen Dodd — Granted as Unopposed

Ms. LePage moves to preclude the defendants from presenting Captain Cullen Dodd as an expert witness or characterizing his testimony as expert opinion. The defendants do not oppose the motion. The court grants the motion as unopposed. Captain Dodd may not testify as an expert witness, and the parties may not refer to him as an expert.

### 7.2 Defendants' MIL to Exclude Post-Incident Conduct — Denied Without Prejudice

The defendants move to exclude any questioning, argument, evidence, or attempts to introduce evidence alleging or regarding any of Deputy Tim Reid's post-incident conduct not related to the facts of this case. Ms. LePage responds that at present there is no evidence of any post-incident conduct that meets the standard for admissibility under the Federal Rules of Evidence and that she does not presently seek to introduce any evidence regarding post-incident conduct. She argues, however, that if new admissible evidence regarding Deputy Reid's post-incident conduct were to emerge, she should not be categorically precluded in advance from asking to introduce such evidence. The court agrees with Ms. LePage and denies the defendants' motion without prejudice. If Ms. LePage identifies specific evidence of post-incident conduct that she wants to introduce at trial, she must raise the issue in advance and outside the jury's presence, and the defendants may object to its admission then.

The court ruled at the pretrial conference that the specific incident identified by the defendants is not admissible. Fed. R. Evid. 403.

## 8. Objections to Exhibits

Ms. LePage objects to three categories of documents on the ground that they are inadmissible hearsay: (1) Napa County Sheriff's Department police reports, (2) Ms. LePage's administrative claim filed against Napa County with attachments, and (3) Deputy Reid's standards and training report.[15]

Ms. LePage objects to two Napa County Sheriff's Department Case Summary Reports.[16] The portions of these exhibits that contain the reporting officer's own observations and knowledge are admissible under the public-records exception to hearsay. Fed. R. Evid. 803(8); *Mosavi v. Brown*, No. LA 15-cv-04147 VAP (AFMx), 2018 WL 5911761, at *7 (C.D. Cal. Aug. 7, 2018) (admitting portions of police reports that contain the reporting officer's own observations and knowledge

---

[15] *See* Joint Trial Ex. List – ECF No. 121.

[16] *Id.* at 2 (citing Trial Ex. 2 (Case Summary Report); Trial Ex. 3 (Case Summary Report)).

under the public-records exception) (citing *United States v. Pena-Gutierrez*, 222 F.3d 1080, 1086–87 (9th Cir. 2000)). To the extent the police reports rely on statements made by someone other than the reporting officer, those portions of the reports are inadmissible, unless the statements qualify under an independent hearsay exception. *Mariscal v. McIntosh*, No. CV 04-9087 CAS (Ex), 2006 WL 6627090, at *6 (C.D. Cal. Dec. 19, 2006) ("Statements by third persons that are recorded in an investigative report are hearsay within hearsay. As such they are inadmissible unless they qualify for their own exclusion or exception from the hearsay rule, e.g., as party admissions or as qualifying under some other hearsay exception.") (quoting 5 Weinstein's Federal Evidence § 803.10[4][a]); *see United States v. Pazsint*, 703 F.2d 420, 424 (9th Cir. 1983) ("It is well established that entries in a police report which result from the officer's own observations and knowledge may be admitted but that statements made by third persons under no business duty to report may not."). The parties agreed at the pretrial conference to confer about the exhibits and raise any issues in a joint letter brief by October 1, 2019.

Ms. LePage objects to the admission of her claim form filed against Napa County and accompanying attachments.[17] This objection is overruled. Ms. LePage herself submitted the claim form to the Napa County Clerk's office. The claim form, if offered by the defendants, is an opposing-party statement and not hearsay. Fed. R. Evid. 801(d)(2).

Ms. LePage also objects to the admission of Deputy Reid's Standards and Training Report.[18] This objection is overruled. Deputy Reid's training report is admissible hearsay because it is "kept in the course of a regularly conducted business activity." *Causey v. Pan Am. World Airways, Inc. (In re Aircrash in Bali, Indonesia)*, 684 F.2d 1301, 1315 (9th Cir. 1982) (reversing exclusion of pilot's training records as they were admissible under the business-records exception, among other exceptions); *see also, e.g.*, *Berry v. City and Cty. of San Francisco*, No. 17-cv-00056-EDL, 2018 WL 5629293, at *4 (N.D. Cal. June 1, 2018) ("human[-]resources-[]type records, which are often

---

[17] *Id.* (citing Trial Ex. 4 (LePage Claim Against the Cty. of Napa)).

[18] *Id.* (citing Trial Ex. 7 (Reid Profile Report); Trial Ex. 8 (Reid Profile Report)).

found in an individual's employment file . . ., are generally admitted as business records.") (citing cases).

The parties also raised a dispute regarding Ms. LePage's plan to introduce deposition testimony from Cullen Dodd, Jeff Matlock, and Geoffrey Rochester at trial. The defendants plan to present all three witnesses live at trial.[19] At the pretrial conference, the defendants committed to making all three witnesses available (without a subpoena) for Ms. LePage to call in her case in chief and argue that it is inappropriate for Ms. LePage to introduce excerpts of their deposition testimony in her case in chief. As discussed at the pretrial conference, the court directs the parties to meet and confer to see if they can reach an agreement, and if they cannot, to submit a joint letter brief by October 1, 2019, setting out their respective positions.

## 9. Jury Instructions

The parties raised only one dispute regarding their proposed jury instructions, namely, whether to include an instruction for Battery by a Police Officer (CACI 1305) in addition to the agreed-upon instruction for the federal excessive-force claim based on Ninth Circuit Model Civil Jury Instruction 9.25, as opposed to having the agreed-upon excessive-force instruction serve as the instruction for the state-law battery claim as well.

The California Supreme Court has held that "California's civil jury instructions specifically direct the jury, in determining whether police officers used unreasonable force for purposes of tort liability, to consider the same factors" that federal courts use for Section 1983 excessive-force claims. *Hernandez v. City of Pomona*, 46 Cal. 4th 501, 514 (2009) (comparing CACI 1305 with federal court's jury instruction on Section 1983 excessive-force claim). The court thus finds that, to avoid jury confusion, it would be appropriate to use the agreed-upon excessive-force instruction for the state-law battery claim as well rather than having two instructions. *Cf. Estate of Casillas v. City of Fresno*, No. 1:16-CV-1042 AWI-SAB, 2019 WL 2869079, at *19 (E.D. Cal. July 3, 2019) (combining excessive-force instruction and battery instruction and collecting cases in support),

---

[19] *See* Joint Proposed Pretrial Order Ex. D – ECF No. 120-6 at 2.

*appeal docketed*, No. 19-16436 (9th Cir. filed July 22, 2019); *Dubose v. Cty. of Los Angeles*, No. CV 09-7832 CAS (AJWx), 2012 WL 13001399, at *1 (C.D. Cal. Mar. 22, 2012) ("The Court finds that, to avoid confusion, it would be appropriate to instruct the jury that 'excessive force' for the purposes of proving a claim under § 1983 is the same as 'unreasonable force' for purposes of proving a claim for battery by a peace officer.") (citing cases); *Susag v. City of Lake Forest*, 94 Cal. App. 4th 1401, 1412–13 (2002) ("[I]t appears unsound to distinguish between section 1983 and state law claims arising from the same alleged misconduct. . . . To avoid jury confusion and to ease judicial administration, it makes sense to require plaintiff to prove unreasonable force on both claims."). At the pretrial conference, the defendants agreed with the court's using a single instruction for both claims.

## 10. Verdict Form

The court will file a proposed verdict form separately. If the parties have issues regarding the proposed verdict form, they may submit a joint letter brief by October 1, 2019, setting out their respective positions.

## 11. Jury Questionnaire

Ms. LePage proposed modifications to the court's standard questionnaire.[20] The court adopts them and will file the questionnaire separately.

## 12. Trial

By October 12, 2019, counsel must give notice of the order of proof (meaning, the order of witnesses and the exhibits, including illustrative exhibits used in opening statements and otherwise) for the first day of trial. Thereafter, at the end of each trial day (generally, by 2:00 p.m.), counsel must give notice of the order of proof for the next trial day. The parties must notify the court of any issues by the end of the day so that the court can resolve them. To the extent that

---

[20] Joint Proposed Pretrial Order Ex. H – ECF No. 120-8 at 4–5.

the parties will call hostile witnesses, which means that the opposing party's "cross examination" will be its direct examination, counsel must provide a list of all exhibits to be used with the same witness on cross examination (other than for impeachment). The parties will call their joint witnesses only once (which means that those witnesses will be called during the plaintiff's case).

**IT IS SO ORDERED.**

Dated: September 26, 2019

_____
LAUREL BEELER
United States Magistrate Judge